UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

AARON CLARK,

                Plaintiff,                            Case No. 2:11-cv-253

v.                                                       Honorable R. Allan Edgar

ARTHUR J. DERRY, et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* without payment of an initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

    I.        Factual allegations

Plaintiff Aaron Clark, an inmate at the Alger Maximum Correctional Facility (LMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff names Assistant Resident Unit Supervisor Arthur J. Derry, Captain Unknown Miller, Resident Unit Officer A. MacArthur, Sergeant N. Marra, Assistant Resident Unit Supervisor G. McLeod, Warden Greg McQuiggin, Assistant Deputy Warden Jacqueline Nadeau, Assistant Deputy Warden P. Hubbard, Captain J. Andrzejak, Lieutenant T. Altoft, Resident Unit Manager D. P. Mansfield, Acting Warden J. Boyton, Sergeant M. Malkowski, Storekeeper John Walton, Assistant Deputy Warden Fredrick J. Robinson, Property Room Officer Unknown Party, Assistant Deputy Warden D. Maclaren, Grievance Coordinator Mike McLeon, Hearing Officer Unknown Robbins, Hearing Investigator Unknown Theut, Hearing Investigator Unknown Durant, Resident Unit Officer Unknown Beamish, Resident Unit Officer M. Wilcox, Resident Unit Officer W. Thompson, Resident Unit Officer Unknown Meyer, Resident Unit Officer Unknown Roan, Resident Unit Officer Unknown Miller, Resident Unit Officer Unknown Bradley, Resident Unit Officer Unknown Gaines, Resident Unit Officer D. Campbell, MDOC Director Patricia L. Caruso, Regional Administrator Unknown Russell, Grievance Specialist Veda Dove, Grievance Specialist Barb Shirley, Grievance Specialist John Doe #1, Lieutenant John Doe #2, Supervisor John Doe #3, and Storekeeper Supervisor John Doe #4 as Defendants in this case. Plaintiff asserts that Defendants' alleged misconduct occurred while he was confined at the Chippewa Correctional Facility (URF).

In his complaint, Plaintiff alleges that on June 25, 2009, he arrived at URF. Plaintiff told Defendant Miller that he was afraid to be placed in the general population because of threats he

had received in the past from inmates affiliated with gangs such as the Moorish Americans and the Melanics. Plaintiff stated that he would feel safer in protective custody. Defendant Miller asked Plaintiff why he was worried about such threats when the individuals who made them were not present at URF. Plaintiff responded that individuals who wanted to harm Plaintiff could track him down through friends and family on the outside, and then send instructions to prisoners at URF to attack Plaintiff. Defendant Miller, who was joined by Defendant MacArthur, told Plaintiff that URF did not have protective custody and he would have to go to the general population. Plaintiff refused to go and called Defendants "a bunch of white racist people." Plaintiff was then given a direct order to go to the general population, which he again refused. Plaintiff was cuffed, manhandled, and taken to segregation. Plaintiff claims that Defendant Miller squeezed his arm very tightly and when Plaintiff asked him why, Defendant Miller denied squeezing his arm and told Plaintiff to "shut up." Plaintiff was then placed in a shower stall, strip searched, given a segregation jumpsuit, and placed in an observation cell.

Plaintiff alleges that Defendant Thompson later pushed a piece of paper under his door, which was a ticket for disobeying a direct order and insolence. Plaintiff states that no one ever reviewed the ticket with him. During the hearing, Defendants Miller and MacArthur lied and stated that Plaintiff never requested protection. Plaintiff was subsequently found guilty of disobeying a direct order, and the insolence charge was dismissed as duplicative. Plaintiff wrote grievances on Defendant Thompson, for refusing to give him supplies, and on Defendant Marra for lying about reviewing the misconduct ticket with him. Plaintiff was taken before the Security Classification Committee (SCC), which consisted of Defendants Hubbard, Andrzejak, and McLeod, all of whom ridiculed Plaintiff and classified him to administrative segregation.

Plaintiff claims that he had names and prison numbers of most of the individuals who were a threat to him, but that Defendants refused to find out the locations of these prisoners or to otherwise protect Plaintiff. Plaintiff further states that the list of names was stolen from him by Defendant Briggs and other officers while at LMF. Plaintiff states that he wrote grievances on Defendant Derry because he was having difficulty sending out his legal mail and getting his indigent store orders. Consequently, several officers began to retaliate against Plaintiff. Specifically, Plaintiff states that he began to have problems with Defendant Wilcox picking up his kites for law books, soap, toilet paper, and other items, and that all of the named Defendants have harassed Plaintiff and screened him at a higher security level out of retaliation for his use of the grievance system. Plaintiff states that Defendants Robinson, McQuiggin, Maclaren, Nadeau, Boynton, Mansfield, Altoft, McLeon, Derry, Caruso, Russell, Dove, Shirley, Walton, and the John Doe Defendants all interfered with his ability to properly grieve his claims. Plaintiff seeks compensatory and punitive damages, as well as equitable relief.

    I.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff appears to be asserting that Defendants failed to protect him in violation of the Eighth Amendment. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-527 (1984)). To establish liability under the Eighth Amendment for a claim based on a failure

to prevent harm to a prisoner, plaintiffs must show that the prison officials acted with "deliberate indifference" to a substantial risk that the defendant would cause prisoners serious harm. *Farmer,* 511 U.S. at 834; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Taylor v. Mich. Dep't of Corr.* 69 F.3d 76, 79 (6th Cir. 1995). *See Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001).

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

As noted above, Plaintiff alleges that he told Defendants Miller and MacArthur that he had received threats in the past and would like to be placed in protective segregation, but that they did not take his claims seriously because the individuals who made the threats were not housed at URF. Plaintiff asserts that the prisoners who wished to harm him could discover his location through friends and family on the outside. Finally, Plaintiff states that although he had the names

and prison numbers of most of the indivicuals who had threatened him, Defendants refused to discover the location of the prisoners. None of the allegations show that Plaintiff was under any imminent threat of attack by prisoners at URF. The court concludes that Plaintiff's allegations are insufficient to show that Plaintiff's fear of an attack was reasonable. Therefore, Plaintiff's failure to protect claims are properly dismissed.

Plaintiff also alleges that Defendant Miller squeezed his arm tightly while escorting him to administrative segregation, and told Plaintiff to "shut up" when Plaintiff asked Defendant Miller why he was squeezing the arm. Plaintiff's allegations regarding Defendant Miller's alleged use of force are insufficient to state a claim because the alleged deprivation is not sufficiently grave. Only those deprivations denying "the minimal civilized measure of life's necessities" are sufficiently grave for an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). A de minimis use of physical force is beyond constitutional recognition, provided that the use of force is not of a sort "repugnant to mankind." *Id*. at 9-10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see Norman v. Taylor*, 25 F.3d 1259, 1264 (4th Cir. 1994), *cert. denied* 513 U.S. 1114 (1995) ("absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis).

In *Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178-79 (2010), the Supreme Court emphasized that *Hudson v. McMillian*, 503 U.S. 1, 4 (1992), held that the fact that an inmate's injuries were "de minimis" is not itself a bar to an Eighth Amendment claim. The seriousness of the injury is not a threshold inquiry. *Wilkins*, 130 S. Ct. at 1178 (quoting *Hudson*, 503 U.S. at 7). "The 'core judicial inquiry,' we held, was not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm.'" *Id.* (quoting *Hudson*, 503 U.S. at 7). "'When prison officials maliciously and sadistically use force to cause harm," the Court recognized, 'contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" *Id.* Nevertheless, the absence of serious injury is relevant as a factor in determining whether the use of force plausibly could have been thought necessary to the situation. *Id.* The court notes that Plaintiff fails to allege that he suffered any injuries as a result of Defendant Miller's conduct. Moreover, the mere act of "squeezing" Plaintiff's arm during a prison move does not rise to the level of an Eighth Amendment deprivation.

Plaintiff claims that he was falsely convicted of disobeying a direct order in violation of his due process rights. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior. The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest." But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real

> substance and is sufficiently embraced within Fourteenth Amendment
> "liberty" to entitle him to those minimum procedures appropriate
> under the circumstances and required by the Due Process Clause to
> insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his major misconduct convictions resulted in any loss of good-time credits, nor could he. The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits[1] for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. 481 F.3d at 440. Building on this ruling, in *Nali v. Ekman*, 355 F. App'x 909 (6th Cir. 2009), the court held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x at 912; *accord, Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at *4 (E.D. Mich. Nov. 24, 2010) (Report & Recommendation) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *adopted as judgment of court*, 2011 WL 5491196 (Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due-process claim based on the loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461-62 (6th Cir. 2008).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due-process challenge to prison misconduct convictions that result in a

---

[1] For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. MICH. COMP. LAWS § 800.33(5).

significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his misconduct conviction. Plaintiff contends that he was reclassified to administrative segregation following the misconduct conviction. To determine whether segregation of an inmate from the general prison population involves the deprivation of a liberty interest protected by the due process clause, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "in relation to the ordinary incidents of prison life." *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, the Sixth Circuit has repeatedly found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones*, 155 F.3d at 812-23 (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). Plaintiff has failed to make any allegations which show that his segregation is "atypical and significant." Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004).

Plaintiff claims that Defendants retaliated against him for his use of the grievance system by failing to pick up kites for law books, soap, toilet paper, and other items, screening him at a higher security level than he should have been, and harassing him in various ways. Retaliation

based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Filing a grievance is constitutionally protected conduct under the First Amendment. See Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir. 2001); Noble v. Schmitt, 87 F.3d 157, 162 (6th Cir. 1996). Plaintiff, however, cannot show that Defendants' alleged misconduct was an adverse action taken against him for filing grievances. Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create

>an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010). In this case, as in *Brandon v. Bergh*, Plaintiff's allegations of retaliatory motive are entirely conclusory. Therefore, Plaintiff's retaliation claims are properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.

Dated:     4/16/2012              /s/ R. Allan Edgar
                                  R. Allan Edgar
                                  United States District Judge